(No. 23552.—

WILLIAM WOLLSCHLAEGER, Appellee, *vs.* EDNA MIX, Appellant.

*Opinion filed June 17, 1936—Rehearing denied October 13, 1936.*

RAYMOND F. HAYES, and ODE L. RANKIN, for appellant.

OTTO C. RENTNER, and HENRY F. ANTES, for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

William Wollschlaeger filed a suit in the circuit court of Cook county against Edna Mix, his daughter, to cancel a deed made by him to her and for re-assignment of a life insurance policy. A decree was entered granting the prayer of the complaint, and Edna Mix has perfected an appeal to this court.

The decree found that defendant ingratiated herself into plaintiff's confidence and falsely represented that his other children were conspiring to get his property away from him; that she persuaded him to turn it over to her for his protection, promising to re-convey it upon his re-

quest; that he believed the representations and made the transfer because of his confidence in her; that he subsequently learned such representations were false and demanded a return of the property, and that she returned the insurance policy but refused to re-assign it or to re-convey the real estate. Defendant claims that the property was conveyed to her because of her kindness to plaintiff, and that he desired her and her brother George to have it because of neglect and abuse by his other children; that it was agreed plaintiff should retain, during his lifetime, the income from the real estate; that on account of George being in debt the title was put in her name to save any trouble for plaintiff, and on account of those facts she refused to re-convey the real estate, and refused to re-assign the insurance policy because of her beneficial interest therein.

The evidence shows that plaintiff was eighty-two years of age at the time the suit was filed. His wife died in December, 1932. They were the parents of ten children, five of whom were living—*i. e.,* George Wollschlaeger, Alvina Erdmann, Anna Herzog, Lillian Drinhaus, and defendant. Plaintiff's wife owned a two-apartment building on North Springfield avenue, in the city of Chicago. He and she occupied the first floor at the time of her death. The second floor apartment was occupied by Alvina Erdmann and her family. Plaintiff owned the property in controversy, situated on South Ashland avenue. After the death of plaintiff's wife he asked Mrs. Drinhaus to come and stay with him. She said she could not do it but asked him to live with her. He declined to do so, saying he could not leave his own home; that his eyes were bad, he felt bad, had rheumatism and must have somebody to take care of him. Mrs. Mix said that as Mrs. Drinhaus could not come to his home she would do so. She, her husband and their son moved into plaintiff's home and remained with him from December, 1933, to February, 1935. This suit was instituted in January of that year. Meanwhile, defendant

took care of plaintiff, cooked and kept house for him, read the paper to him, ministered to his wants, took him driving and took care of his business. Plaintiff testified that they were nice to him until he demanded a return of the property.

Shortly after the death of his wife plaintiff called his children together for the purpose of having them quit-claim to him the premises which had belonged to his wife. Defendant was willing to do it but the other children refused to convey. Plaintiff became enraged at them and started proceedings in the probate court for administration upon his wife's estate. He was made administrator. With his son George and defendant he instituted a suit to partition the North Springfield avenue property. Plaintiff testified that both of those proceedings were instigated and managed by defendant. A series of quarrels between plaintiff and his daughters other than defendant followed their refusal to quit-claim their mother's property to him. In February, 1933, Anna Herzog charged her father with always treating them mean, making them live in a basement and abusing his wife terribly. Plaintiff ordered her out of the house. In the same month, during an altercation over a proposition by Lillian Drinhaus to take an inventory of the mother's property, she threatened defendant and told her father she hoped he would have no peace in the house and that her mother would haunt him. Plaintiff then told her to leave the house. In June of that year Edna Erdmann, daughter of Alvina, struck defendant on the head with a clothes-reel, knocking her down. Plaintiff came to the assistance of defendant and insisted she prosecute his grand-daughter. Defendant procured a warrant and plaintiff testified in favor of his daughter. The grand-daughter was placed under a peace bond.

Immediately after the hearing in the assault case plaintiff told an attorney that it had been necessary for him to take out letters of administration on his wife's estate and to institute a partition suit; that he was tired of the way

the other children had been treating him, and he directed the attorney to prepare a deed conveying the South Ashland avenue property to defendant and his son George. During the conversation it was agreed that on account of George's debts the deed should be made to defendant and that plaintiff should have the income during his lifetime. The attorney said he would draw the deed and that plaintiff should return the next day. Plaintiff did so, and the deed was executed on July 13, 1933, at the attorney's office, who notarized it and filed it for record. The insurance policy was assigned during the previous month. However, plaintiff testified he did not execute the deed at the attorney's office but signed some paper in the dining room at home, in defendant's presence, which he afterward learned was a deed conveying the Ashland avenue property. His daughter Alvina Erdmann testified she saw him at home several times on that day. The witness was away from home from 11:00 o'clock in the morning until about a quarter after 1:00 and went away again at 3:30 P. M. Defendant and the attorney who drew the deed both testified that it was executed in his office by plaintiff on that day. Hazel Wollschlaeger, the daughter of plaintiff's son George, testified that after lunch on a day in July she took plaintiff and defendant in her car to the Burnham building to see Hayes, the attorney who prepared the deed; that plaintiff got out of the car and came back in about three-quarters of an hour and they then drove home; that her grandfather asked her to drive them down that day. Plaintiff testified that the description of the property was read to him and that Mrs. Mix said she would give the property back any time he wanted it; that he told her that if anything should happen to her the property would go to the Mix family, and that she said her husband would deed it back to him. He further testified that he did not believe the other children were going to take his property away from him but that he made the deed because he wanted to have peace, and

that it was made to quiet down defendant; that he was not having trouble with the other children but Mrs. Mix refused them the right to come into the house. He at first testified that he demanded a re-conveyance of the property in October, 1933, and then changed his testimony and said it was in November, 1934. His testimony that he did not fear his other children would take his property from him is inconsistent with the finding that he made the deed because defendant induced him to believe they would get the property away from him. He testified that when he demanded a return of the property he stated he wanted it back in his name; that he had more children and wanted to divide it evenly among them. It is significant that the only reason advanced by plaintiff for demanding a return of the property was that he had decided to make a different disposition of it. The record fails to show he ever said anything to defendant about her alleged promise to re-convey upon his demand. If any such promise had been made he would have reminded her of it, and would have based his demand, at least in part, upon that ground. His testimony that the description of the property was read to him when he signed the deed and that he talked to defendant about the effect of her death prior to his, refutes the allegation in the complaint that at the solicitation of defendant he signed what he has since learned to be a deed to the Ashland avenue property. It is apparent that he knew the instrument was a deed and the legal effect of his act.

The fact that defendant owed her father $200 and her mother $80 is of no significance. He held Anna Herzog's note for $1200 and that of Mrs. Drinhaus for $1550. Alvina owed $275, and George Wollschlaeger owed a sum the amount of which is not shown. It appears that the notes were in the custody of Hayes as attorney for plaintiff and in the actual possession of defendant; that they were all, except the note of George, returned to counsel

whom plaintiff later employed. There is a dispute between plaintiff and defendant as to whether she returned George's note to him. While it is true that defendant and her sisters had quarrels and difficulties, the record shows in each instance that defendant was not the aggressor. It further shows that plaintiff was on bad terms with the other daughters, none of whom, except Mrs. Erdmann, testified at the hearing although they were present.

Defendant's counsel testified in her behalf. While it is not good practice for an attorney to testify in a case in which he is employed his testimony is not incompetent, and the fact that he is employed in the case goes only to the weight of his testimony.

The testimony fails to show any fiduciary relation existing between plaintiff and defendant or that she ingratiated herself into his confidence with a purpose of procuring the Ashland avenue property or the insurance policy. On the contrary, it shows that she faithfully performed her filial duty to plaintiff; that he was on bad terms with the other daughters and desired to make a disposition of his property so that they would not receive it at his death, and that he intended to reward defendant and provide for his son George. The testimony is convincing that defendant made no promise to re-convey the property, but that plaintiff's demand was based upon a change of mind and a desire to make a different disposition of his property. Plaintiff wholly failed to make out a case under his complaint.

The decree of the circuit court is reversed and the cause is remanded, with directions to dismiss the complaint for want of equity.

*Reversed and remanded, with directions.*